**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| PHILLIP KUNTZ and FRANCES J. KUNTZ, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )   CIVIL NO. 06-554-GPM |
| | ) |
| ILLINOIS CENTRAL RAILROAD COMPANY a/k/a CANADIAN NATIONAL/ILLINOIS CENTRAL RAILROAD, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

This matter, which was recently transferred from the docket of United States Senior District Judge James L. Foreman to the docket of the undersigned United States District Judge, is before the Court sua sponte on reconsideration of Judge Foreman's order denying remand of this case to state court (Doc. 22). The order is **VACATED** and, pursuant to 28 U.S.C. § 1447(c), this case is **REMANDED** to the Circuit Court of the Twentieth Judicial Circuit, Perry County, Illinois, for lack of federal subject matter jurisdiction.

### INTRODUCTION

This case arises from an incident that occurred on April 3, 2006, in which Phillip Kuntz was injured at a railroad crossing in Perry County, Illinois, when his car was struck by a train owned and operated by Defendant Illinois Central Railroad Company a/k/a Canadian National/Illinois Central Railroad ("ICR"). The complaint in this case, which was filed originally in state court in Perry County on May 26, 2006, alleges that ICR was negligent in connection with the accident by: failing

Page 1 of 21

to maintain its crossing by keeping the right of way reasonably clear of brush, shrubbery, trees, and weeds, in violation of 625 ILCS 5/18c-7401(1) and (3) and Ill. Admin. Code Tit. 92, § 1535.205; failing to provide adequate sight distance at the crossing so that motorists could see approaching trains; failing to maintain the crossbucks at the crossing; failing to equip the crossing with additional signage after receiving a recommendation to do so from the Illinois Commerce Commission; failing to maintain the crossing by reason of loose gravel and potholes in the roadway; failing to give motorists adequate warning of approaching trains; failing to stop or slow its train to avoid the accident; failing to sound a proper warning; and failing to maintain a proper lookout. Mr. Kuntz's wife, Plaintiff Frances J. Kuntz, asserts a claim for loss of consortium.[1]

ICR timely removed the case from state court to this Court, contending that the case arises under federal law. Mr. and Mrs. Kuntz moved for remand of the case to state court for lack of federal subject matter jurisdiction. By order entered November 15, 2006, Judge Foreman, to whom the case was assigned after removal, denied remand. On December 14, 2006, the case was reassigned to the undersigned District Judge. By Order entered December 20, 2006, the Court advised the parties that it had undertaken sua sponte reconsideration of Judge Foreman's order denying remand of the case to state court, and directed the parties in the case to submit any additional authorities pertinent to the existence of subject matter jurisdiction by December 27, 2006. Having reviewed the file in this case, including Judge Foreman's order denying remand, together with all additional submissions by the parties regarding subject matter jurisdiction, the undersigned

---

1.   It appears from the record that Mr. Kuntz died on July 11, 2006. A motion for an enlargement of time to substitute the representative of his estate as a Plaintiff in this case is pending before the Court. Because for the reasons discussed infra the Court concludes that federal subject matter jurisdiction is lacking in this case, the Court does not reach the merits of that motion.

District Judge concludes that the order denying remand is in error and must be vacated and that this case must be remanded to state court for lack of federal subject matter jurisdiction.

### DISCUSSION

**A.      Legal Standard**

It is axiomatic that "[f]ederal courts are courts of limited jurisdiction, with power to hear a case only if such power is granted by the Constitution and authorized by statute, and the presumption is that a case lies outside of this limited jurisdiction." *McNichols v. Johnson & Johnson*, No. CIV. 06-160-GPM, 2006 WL 3360542, at *1 (S.D. Ill. Apr. 19, 2006). "Because a federal court's jurisdiction is limited, it has a 'nondelegable duty to police the limits of federal jurisdiction with meticulous care.'" *Id.* (quoting *Market St. Assocs. Ltd. P'ship v. Frey*, 941 F.2d 588, 590 (7th Cir. 1991)). The limited nature of federal subject matter jurisdiction imposes on federal courts a duty to examine their jurisdiction at every stage of a proceeding, sua sponte if need be. "Jurisdiction is the 'power to declare law,' and without it the federal courts cannot proceed. Accordingly, not only may the federal courts police subject matter jurisdiction *sua sponte*, they must." *Hay v. Indiana State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)). Thus, just as subject matter jurisdiction cannot be created through, for example, laches, waiver, or estoppel, *see Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *Sadat v. Mertes*, 615 F.2d 1176, 1188 (7th Cir. 1980), so a federal court has a duty to ascertain the existence or non-existence of subject matter jurisdiction regardless of the representations of the parties. *See Capital Fed. Sav. of Am. v. Geldermann & Co.*, No. 86 C 9232, 1987 WL 7270, at *1 (N.D. Ill. Feb. 24, 1987) (citing *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986)). *See also*

Page 3 of  21

*Commercial Nat'l Bank of Chicago v. Demos*, 18 F.3d 485, 487 (7th Cir. 1994) ("We are required to satisfy ourselves not only of our own jurisdiction, but also the jurisdiction of the district court . . . . Further, we must consider the issue *sua sponte* when it appears from the record that jurisdiction is lacking.").

The standard concerning removal of actions from state court to federal court is equally well established. Removal is governed by 28 U.S.C. § 1441, which provides, in pertinent part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). In other words, "[a] defendant may remove a case to federal court only if the federal district court would have original subject matter jurisdiction over the action." *Disher v. Citigroup Global Mkts. Inc.*, 419 F.3d 649, 653 (7th Cir. 2005), *vacated on other grounds*, 126 S. Ct. 2964 (2006). The party seeking removal has the burden of establishing federal jurisdiction. *See Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). "Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." *Id*. Put another way, there is a strong presumption in favor of remand. *See Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir. 1976). *See also Littleton v. Shelter Ins. Co.*, No. 99-912-GPM, 2000 WL 356408, at *1 (S.D. Ill. Mar. 9, 2000) ("The removal statute, 28 U.S.C. § 1441, is construed narrowly, and doubts concerning removal are resolved in favor of remand.").

**B.      Federal Question Jurisdiction**

In general, of course, district courts have "original jurisdiction of all civil actions arising

under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The usual test of whether an action arises under federal law for purposes of so-called "federal question" jurisdiction under section 1331 is the "well-pleaded complaint" rule, which provides generally that a case arises under federal law within the meaning of the statute only when federal law appears on the face of a plaintiff's complaint. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152-53 (1908). "[T]he paramount policies embodied in the well-pleaded complaint rule . . . [are] that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Caterpillar*, 482 U.S. at 398-99. Importantly, the well-pleaded complaint rule requires generally that a complaint state a claim for relief under federal law. As Justice Holmes explained, "A suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916). The purpose of restricting federal question jurisdiction to cases asserting claims for relief under federal law is, in addition to preserving a plaintiff's right to choose his or her forum, to "severely limit[ ] the number of cases . . . that may be initiated in or removed to federal district court, thereby avoiding more-or-less automatically a number of potentially serious federal-state conflicts." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9-10 (1983). The policy underlying the well-pleaded complaint rule of protecting the proper balance of power as between federal and state courts dovetails with the policy favoring narrow construction of removal. As a court of appeals in a sister circuit recognized, "[B]ecause the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns, . . . which mandate strict construction of the removal statute."

*Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365-66 (5th Cir. 1995).

In this case the operative complaint is devoid of any reference to federal law. ICR's notice of removal asserts, however, that federal question jurisdiction is proper because the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. §§ 20101-20153, completely preempts the claims alleged in the complaint or, alternatively, FRSA preemption of those claims presents a substantial question of federal law such as to give rise to federal subject matter jurisdiction. Although it is not entirely clear from Judge Foreman's order denying remand, it appears that Judge Foreman found federal question jurisdiction on the basis of complete preemption, without reaching the issue of whether the complaint raises a substantial federal question. The Court will address each of ICR's asserted grounds for federal subject matter jurisdiction in turn.

### 1.    Complete Preemption

In a limited class of cases an action may arise under federal law within the meaning of 28 U.S.C. § 1331 even if the complaint in the case asserts no claim for relief under federal law where state law is "completely preempted" by federal law. Complete preemption occurs when "the preemptive force of a [federal] statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Nelson v. Stewart*, 422 F.3d 463, 466-67 (7th Cir. 2005) (quoting *Caterpillar*, 482 U.S. at 393). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* at 467. "In such situations, the federal statute . . . not only preempt[s] state law but also authorize[s] removal of actions that sought relief only under state law." *Id.* Complete preemption is a narrow exception to the well-pleaded complaint rule. The Supreme Court of the

United States has found complete preemption as to only four federal laws: the Employee Retirement Income Security Act of 1974, *see Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66-67 (1987); a treaty concerning Indian tribal land, *see Oneida Indian Nation of N.Y. v. Oneida County, N.Y.*, 414 U.S. 661, 681-82 (1974); the Labor Management Relations Act, *see Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 559-60 (1968); and the National Bank Act.  *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8-11 (2003).

The Supreme Court has held that, for purposes of establishing complete preemption, the "touchstone of the federal district court's removal jurisdiction is . . . the intent of Congress."  *Metropolitan Life*, 481 U.S. at 66.  In *Beneficial National Bank* the Court instructed further that complete preemption will be found only when the "federal statute[ ] at issue provide[s] the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action."  539 U.S. at 8.  The United States Court of Appeals for the Seventh Circuit has held that, to establish that a federal statute is completely preemptive of state law so as to permit removal, a defendant must show that a statute evinces a clear Congressional intent that state-law claims be removable under the statute and the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law.  "Complete . . . preemption exists where . . . Congress has so completely preempted a particular area that no room remains for any state regulation and the complaint would be 'necessarily federal in character.'"  *Rogers v. Tyson Foods, Inc.*, 308 F.3d 785, 787 (7th Cir. 2002) (quoting *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 986 (7th Cir. 2000)).  Further, "[w]e find complete preemption where there is a . . . congressional intent in the enactment of a federal statute not just to provide a federal defense to a state created cause of action but to grant a defendant the ability to

remove the adjudication of the cause of action to a federal court by transforming the state cause of action into a federal cause of action." *Id*. at 788 (emphasis omitted). The *Rogers* court explained,

> As this circuit interprets the law, the . . . ability to bring suit under [federal law] is an element of . . . complete preemption . . . . Logically, complete preemption would not be appropriate if a federal remedy did not exist in the alternative. Otherwise, a plaintiff would be forced into federal court with no relief available for . . . vindicating the same interest . . . . Preemption is what wipes out state law, but the foundation for removal is the creation of federal law to replace state law . . . . Accordingly, . . . unless the federal law has created a federal remedy – no matter how limited – the federal law, of necessity, will only arise as a defense to a state law action . . . and will thus not give rise to the federal question jurisdiction underlying complete preemption.

*Id*.

In sum, "the existence of a private right of action under federal law is an antecedent of complete preemption." *Rogers*, 308 F.3d at 788. *See also Sullivan v. American Airlines, Inc.*, 424 F.3d 267, 276 (2d Cir. 2005) (quoting *Caterpillar*, 482 U.S. at 392) (stating that "[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant.") (emphasis omitted); *Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000) (the test of whether a federal statute completely preempts state law for removal purposes is whether: (1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is a clear Congressional intent that claims brought under the federal law be removable); *Goepel v. National Postal Mail Handlers Union*, 36 F.3d 306, 311-12 (3d Cir. 1994) (the test of complete preemption is (1) whether a federal statute contains civil enforcement provisions under which a plaintiff's state claims could be brought and (2) whether the federal statute contains a "clear indication of a Congressional intention to permit removal despite

the plaintiff's exclusive reliance on state law.").  It is plain that the FRSA does not satisfy the demanding test for complete preemption.

The FRSA manifests no intent to completely federalize the field of state tort law with respect to railroads.  Although the statute contains a provision preempting state law that conflicts with regulations promulgated pursuant to the statute by specified federal agencies, the statute also contains an express savings clause preserving state-law remedies as to matters that are not substantially subsumed by such regulations:

> Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.  A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement.  A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order –
> (1) is necessary to eliminate or reduce an essentially local safety or security hazard;
> (2) is not incompatible with a law, regulation, or order of the United States Government; and
> (3) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106.  *See also CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) (explaining that federal regulations "cover[ ] the . . . subject matter" of state law within the meaning of 49 U.S.C. § 20106 "only if the federal regulations substantially subsume the subject matter of the relevant state law.").  As the Supreme Court recognized in *Easterwood*, the language of the FRSA's provisions concerning preemption "displays considerable solicitude for state law" and imposes a "stringent" standard for preemption.  507 U.S. at 665, 668.  *See also United Transp. Union v. Foster*, 205 F.3d 851, 860 (5th Cir. 2000) (noting that, in interpreting the scope of FRSA preemption, courts should "eschew[ ] broad categories such as 'railroad safety,' focusing instead on the specific subject matter

contained in the federal regulation," and that "FRSA preemption is even more disfavored than [federal] preemption [of state law] generally."). The text of the statute evinces no legislative intent to make the subject matter of tort claims against railroads a field occupied entirely by federal law.

Further, the FRSA provides no federal remedy for the claims asserted in this case. In some instances the FRSA and regulations promulgated thereunder arguably create a federal remedy. *See, e.g., Peters v. Union Pac. R.R. Co.*, 80 F.3d 257, 260-62 (8th Cir. 1996) (finding complete preemption as to a railroad engineer's state-law claim that a railroad converted his engineer certificate where regulations promulgated pursuant to the FRSA set out an administrative adjudication process for disputes about certification); *Rayner v. Smirl*, 873 F.2d 60, 63-67 (4th Cir. 1989) (finding that the FRSA's protections for whistleblowers caused complete preemption of a railroad employee's state-law claim for retaliatory discharge). However, the regulations promulgated under the FRSA that potentially apply to this case create no federal remedy. For example, if the allegations of the complaint regarding excessive vegetation and inadequate sight distance at the crossing where Phillip Kuntz was injured concern vegetation on or immediately adjacent to the tracks, then 49 C.F.R. § 213.37 simply extinguishes those claims, without furnishing any federal remedy for them. *See Easterwood v. CSX Transp., Inc.*, 933 F.2d 1548, 1554 (11th Cir. 1991) (a plaintiff's claim that a grade-crossing collision was the result of excessive vegetation on or immediately adjacent to the tracks that obstructed sight distance is preempted under 49 C.F.R. § 213.37, but the regulation does not apply to vegetation near, but not immediately adjacent to, the tracks); *Missouri Pac. R.R. Co. v. Railroad Comm'n of Tex.*, 833 F.2d 570, 577 (5th Cir. 1987) (same); *O'Bannon v. Union Pac. R.R. Co.*, 960 F. Supp. 1411, 1422-23 (W.D. Mo. 1997) (same).

Similarly, if the crossing where Mr. Kuntz was injured was equipped with federally-approved warning devices that were actually installed with federal funds and operating at the time of the accident, under 23 C.F.R. § 646.214(b)(3) and (4) this mandates dismissal of any claim that the crossing should have been equipped with additional or different warning devices.  *See Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 353-54 (2000); *Lee v. Burlington N. Santa Fe Ry. Co.*, 245 F.3d 1102, 1106 (9th Cir. 2001); *Nye v. CSX Transp., Inc.*, 300 F. Supp. 2d 529, 535 (N.D. Ohio 2004); *Powers v. CSX Transp., Inc.*, 97 F. Supp. 2d 1297, 1307 (S.D. Ala. 2000).

Likewise, if the train that injured Mr. Kuntz was traveling at or below the maximum speed fixed by 49 C.F.R. § 213.9 for the class of track at the crossing where the accident giving rise to this case occurred, this would defeat any claim based upon an allegedly negligent failure to stop or slow, unless the crossing presented a specific, individual hazard that required the train to stop or slow. *See Easterwood*, 507 U.S. at 675 n.15; *Anderson v. Wisconsin Cent. Transp. Co.*, 327 F. Supp. 2d 969, 978-79 (E.D. Wis. 2004); *Bashir v. National R.R. Passenger Corp.*, 929 F. Supp. 404, 412 (S.D. Fla. 1996); *Alcorn v. Union Pac. R.R. Co.*, 50 S.W.3d 226, 242 (Mo. 2001).  Finally, to the extent the claim asserted in the complaint that the train failed to sound a proper warning is based on the volume level of the warning, such a claim is preempted under 49 C.F.R. § 229.129, although naturally the regulation does not displace the railroad's duty under state law to sound a timely warning.  *See Strozyk v. Norfolk S. Corp.*, 358 F.3d 268, 274 n.5 (3d Cir. 2004); *Bebout v. Norfolk & W. Ry. Co.*, 47 F.3d 876, 878 (7th Cir. 1995); *Clark v. Illinois Cent. R.R. Co.*, 794 So. 2d 191, 196-98 (Miss. 2001); *Rivers v. CSX Transp.*, No. 9-01-59, 2002 WL 533397, at **4-5

(Ohio Ct. App. Apr. 10, 2002).[2]

In sum, the federal regulations that may apply to this case establish "conflict preemption" but not complete preemption. "[F]ederal preemption that merely serves as a defense to a state law action (sometimes called 'conflict preemption') does not confer federal question jurisdiction. Thus the defendant cannot cause a transfer to federal court simply by asserting a federal question in his responsive pleading." *Rice v. Panchal*, 65 F.3d 637, 639 (7th Cir. 1995) (citations omitted). *See also Lister v. Stark*, 890 F.2d 941, 943 n.1 (7th Cir. 1989) ("[A] case must be remanded to state court if the sole basis for federal jurisdiction is a preemption defense and if the federal court finds that the preemption is insufficiently complete to confer federal question jurisdiction."); *Husko v. Geary Elec., Inc.*, 316 F. Supp. 2d 664, 670 (N.D. Ill. 2004) ("Conflict preemption is . . . nothing more than an affirmative defense that does not trump the well-pleaded complaint rule."). In *Copling v. Container Store, Inc.*, 174 F.3d 590 (5th Cir. 1999), the court explained:

> Conflict preemption simply fails to establish federal question jurisdiction. Rather than transmogrifying a state cause of action into a federal one, as occurs with complete preemption, conflict preemption serves as a *defense* to a state action. "When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted . . . , the district court, being without

---

2.    The Court notes that the FRSA does not preempt the claims of negligence asserted in the complaint based on ICR's alleged failure to maintain the warning devices at the crossing where Mr. Kuntz was injured, *see Michael v. Norfolk S. Ry. Co.*, 74 F.3d 271, 273 (11th Cir. 1996); *Anderson*, 327 F. Supp. 2d at 975 n.4; *Myers v. Missouri Pac. R.R. Co.*, 52 P.3d 1014, 1028 n.50 (Okla. 2002), ICR's alleged failure to maintain the road surface at the crossing, *see Cox v. Norfolk & W. Ry. Co.*, 998 F. Supp. 679, 689 (S.D.W.Va. 1998), and the alleged failure of ICR's train crew to maintain a proper lookout for motorists at the crossing. *See Wood v. Minnesota Mining & Mfg. Co.*, 112 F.3d 306, 310-11 (8th Cir. 1997); *Baker v. Canadian Nat'l/Illinois Cent. Ry. Co.*, 397 F. Supp. 2d 803, 811 (S.D. Miss. 2005); *Pearson v. Columbus & Greenville Ry. Co.*, 737 So. 2d 390, 398 (Miss. Ct. App. 1998). To the extent the allegations of the complaint regarding inadequate sight lines at the crossing are based on improper design of the crossing, this claim is not preempted either. *See, e.g., Easterwood*, 933 F.2d at 1557 & n.8; *Kansas City S. Ry. Co. v. Johnson*, 798 So. 2d 374, 376-77, 378 (Miss. 2001).

removal jurisdiction, cannot resolve the dispute regarding preemption.  It lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved."

*Id*. at 595 (quoting *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir. 1995)) (emphasis in original) (footnote omitted).  It is well settled that "[s]tate courts are competent to determine whether state law has been preempted by federal law . . . and absent complete preemption . . . they must be permitted to perform that function . . . with regard to state law claims brought before them." *Goepel*, 36 F.3d at 316 (quoting *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R. Co.*, 858 F.2d 936, 942 (3d Cir. 1988)).  *See also Kircher v. Putnam Funds Trust*, 126 S. Ct. 2145, 2156-57 (2006) (state courts are presumed to be able to resolve questions of preemption of state law by federal law and, in any event, their determinations regarding preemption are subject to review by the Supreme Court).  Any questions of preemption of state law by federal law that may be involved in this case must be decided not by this Court, which lacks jurisdiction to resolve those questions, but by the circuit court of Perry County, Illinois.

### 2. Substantial Federal Question

Although Judge Foreman's order denying remand of this case appears to have found federal question jurisdiction on the basis of complete preemption, ICR's notice of removal and its submissions regarding subject matter jurisdiction also invoke jurisdiction under 28 U.S.C. § 1331 on the grounds that the complaint in this case presents a substantial question of federal law, and therefore the Court will address this asserted basis for subject matter jurisdiction as well.  The "substantial federal question" doctrine provides generally that "[e]ven though state law creates [a plaintiff's] cause of action, its case still might 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a

substantial question of federal law in dispute between the parties." *Franchise Tax Bd.*, 463 U.S. at 13. The doctrine normally is traced to *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921), in which a plaintiff brought a complaint for injunctive relief in federal court, alleging that a defendant's actions were illegal because they were taken pursuant to an unconstitutional federal statute. *See id.* at 195-99. The Court held, "A case in law or equity consists of the right of the one party, as well as of the other, and may truly be said to arise under the Constitution or a law of the United States, whenever its correct decision depends upon the construction of either, . . . and again, when . . . the title or right set up by the party, may be defeated by one construction of the Constitution or law of the United States, and sustained by the opposite construction." *Id.* at 199. Thus, federal question jurisdiction exists "where it appears from the bill or statement of the plaintiff that the right to relief depends upon the construction or application of the Constitution or laws of the United States, and that such federal claim is not merely colorable[.]" *Id.*

The substantial federal question doctrine must be applied in a manner that is consistent with the well-pleaded complaint rule, which is to say, a substantial question of federal law must appear on the face of a plaintiff's complaint. In *Gully v. First National Bank*, 299 U.S. 109 (1936), the Court said,

> To bring a case within [federal question jurisdiction], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto, and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal. Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense.

*Id*. at 112-13 (citations omitted).  Similarly, in *Franchise Tax Board* the Court held that, "[W]hether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose."  463 U.S. at 10 (quoting *Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914)).  "Thus, a federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts that federal law deprives the defendant of a defense he may raise, or that a federal defense the defendant may raise is not sufficient to defeat the claim."  *Id*. (citations omitted).  "For better or worse, under the present statutory scheme as it has existed since 1887, a defendant may not remove a case to federal court unless the *plaintiff*'s complaint establishes that the case 'arises under' federal law."  *Id*. (emphasis in original).  "[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action."  *Id*. at 10-11 (quoting *Gully*, 299 U.S. at 112).

The Supreme Court's most important recent pronouncement on the substantial federal question doctrine is, of course, *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), in which the Court furnished guidance as to application of the doctrine, and also placed some significant qualifications on it.  In *Grable* a plaintiff whose real property had been seized by the Internal Revenue Service ("IRS") and sold in order to satisfy a federal tax delinquency brought a quiet title action in state court against the buyer of the property.  *See id*. at 310-11.  The plaintiff alleged that its title was superior to that of the buyer of the property because the IRS failed to give the plaintiff notice of the sale by personal service, rather

than certified mail, as the plaintiff asserted the IRS was required to do under 26 U.S.C. § 6335.  *See*

*id*. at 311.  The buyer of the property removed the case to federal court, asserting that the plaintiff's

complaint raised a substantial question of federal law regarding the interpretation of section 6335

of the Internal Revenue Code.  In evaluating the existence of federal question jurisdiction, the

Supreme Court set out a two-part test for determining whether a complaint presents a substantial

federal question so as to arise under federal law:  (1) whether "a state-law claim necessarily raise[s]

a stated federal issue, actually disputed and substantial"; and (2) whether a federal forum may

entertain a case "without disturbing any congressionally approved balance of federal and state

judicial responsibilities."  *Id*. at 314.

Applying this standard, the *Grable* Court found that the case arose under federal law.  State

law required the plaintiff to set out in its complaint the facts underlying its claim of superior title,

and the basis for the plaintiff's claim of superior title was the alleged failure of the IRS to give the

plaintiff adequate notice, as defined by 26 U.S.C. § 6335, of the sale of the plaintiff's property.  *See*

545 U.S. at 314-15.  The Court said, "Whether [the plaintiff] was given notice within the meaning

of the federal statute is thus an essential element of its quiet title claim, and the meaning of the

federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the

case."  *Id*. at 315.  The Court found further that the exercise of federal jurisdiction would not disrupt

the proper division of labor between federal courts and state courts:

> The meaning of the federal tax provision is an important issue of federal law that
> sensibly belongs in a federal court.  The Government has a strong interest in the
> "prompt and certain collection of delinquent taxes," and the ability of the IRS to
> satisfy its claims from the property of delinquents requires clear terms of notice to
> allow buyers . . . to satisfy themselves that the Service has touched the bases
> necessary for good title.  The Government thus has a direct interest in the availability
> of a federal forum to vindicate its own administrative action, and buyers (as well as
> tax delinquents) may find it valuable to come before judges used to federal tax

> matters.  Finally, because it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor.

*Id*. (quoting *United States v. Rodgers*, 461 U.S. 677, 709 (1983)).  Thus, the Court concluded, "[t]his case warrants federal jurisdiction."  *Id*. at 314.

Importantly, the *Grable* Court reiterated the continuing validity of *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986).  The Court rejected the view adopted by some circuits, including the Seventh Circuit, that under *Merrell Dow* the existence of a federal right of action is a necessary predicate to the exercise of subject matter jurisdiction pursuant to the substantial federal question doctrine.  *See* 545 U.S. at 317.  *See also Seinfeld v. Austen*, 39 F.3d 761, 764 (7th Cir. 1994) ("Under *Merrell Dow*, . . . if federal law does not provide a private right of action, then a state law action based on its violation perforce does not raise a . . . substantial . . . federal question.").  However, the Court emphasized that *Merrell Dow* is consistent with the framework for evaluating the existence of a substantial federal question set out in *Grable*.  The *Grable* Court explained that in *Merrell Dow*, where the Court held that a state-law tort claim resting in part on an allegation that the defendant drug company had violated a federal branding law did not arise under federal law, the absence of a federal right of action suggested the lack of a substantial federal question.  *See* 545 U.S. at 318.  This lack of a federal right of action, combined with the fact that state remedies for mislabeling had not been preempted, provided "an important clue to Congress's conception of the scope of jurisdiction to be exercised under [28 U.S.C.] § 1331."  *Id*.  Moreover, the *Grable* Court explained, had the Court held in *Merrell Dow* that a violation of a federal standard was sufficient to confer jurisdiction over state-law claims, the result would have been disruptive of the federal-state division of labor:

One only needed to consider the treatment of federal violations generally in garden variety state tort law . . . . The violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings . . . . A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state tort cases into federal courts.  Expressing concern over the "increased volume of federal litigation," and noting the importance of adhering to "legislative intent," *Merrell Dow* thought it improbable that the Congress, having made no provision for a federal cause of action, would have meant to welcome any state-law tort case implicating federal law "solely because the violation of the federal statute is said to [create] a rebuttable presumption [of negligence] . . . under state law" . . . . *Merrell Dow*'s analysis thus fits within the framework of examining the importance of having a federal forum for the issue, and the consistency of such a forum with Congress's intended division of labor between state and federal courts.

*Id*. at 318-19 (quoting *Merrell Dow*, 478 U.S. at 811-12).

Applying the *Grable* standard in this case, it is clear the claims asserted by Mr. and Mrs. Kuntz do not present a substantial federal question.  As has been discussed, the FRSA provides no private right of action in this instance; if regulations promulgated under the statute apply to the claims asserted by Mr. and Mrs. Kuntz, those claims are simply extinguished.  The absence of a federal private right of action is, as the *Grable* Court explained, evidence "relevant to, but not dispositive of, the . . . sensitive judgments about congressional intent" courts must make as to the scope of federal question jurisdiction and signifies a "missing welcome mat" for exercising federal jurisdiction.  545 U.S. at 318.  Likewise, as has also been discussed, the complaint in this case presents no question of federal law.  Thus, no "stated federal issue, actually disputed and substantial," appears on the face of the complaint.  *Id*. at 314.  It is obvious that federal law enters this case, if at all, solely by way of a defense of preemption of state law by federal law, so that a finding that this case presents a substantial federal question merely on the basis of ICR's preemption defense would be manifestly contrary to the well-pleaded complaint rule.

Finally, to conclude that federal question jurisdiction exists in this case would be highly

disruptive of the proper division of labor between federal courts and state courts.  In *Easterwood* the

Supreme Court recognized that safety at railroad crossings is a matter that implicates the historic

power of the states to protect the health and welfare of their citizens, mandating strict construction

of FRSA preemption.  *See* 507 U.S. at 663-64.  As the *Grable* Court observed,

> [E]ven when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto.  For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of [28 U.S.C.] § 1331 . . . .  Because arising-under jurisdiction to hear a state-law claim always raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction.

545 U.S. at 313-14.  The claims in this case arise wholly under state law and are most properly heard

in a state forum, not a federal forum.  This case does not require the interpretation of any federal

statute or regulation; if, for example, it is determined that federal funds were spent at the crossing

where Mr. Kuntz was injured, this would require dismissal of the claims asserted in the complaint

based on allegedly inadequate signals at the crossing, but it would not require construction of federal

law.  Similarly, this is not a case where the federal government has a strong interest in "the

availability of a federal forum to vindicate its own administrative action" or where a federal court

possesses greater familiarity with the applicable law than does a state court.  *Id*. at 315.  Lastly, this

is not the type of state-law case that will "rare[ly]" present a question of federal law and thus

have "only a microscopic effect on the federal-state division of labor."  *Id*.  To the contrary, the

Court is well aware from its own experience that it is the rare case arising from a collision between

a train and a motorist at a railroad crossing that does not present issues regarding preemption of state

law by regulations promulgated pursuant to the FRSA.

In concluding that this case does not present a substantial federal question so as to arise under federal law, the Court is mindful that the substantial federal question doctrine, like virtually all matters bearing on the subject matter jurisdiction of federal courts, is to be construed narrowly. As a sister court observed, "The Supreme Court has periodically affirmed this basis for jurisdiction in the abstract . . . , occasionally cast doubt upon it, rarely applied it in practice, and left the very scope of the concept unclear.  Perhaps the best one can say is that this basis endures in principle but should be applied with caution and various qualifications." *Almond v. Capital Props., Inc.*, 212 F.3d 20, 23 (1st Cir. 2000) (footnote omitted).  The Court also is mindful that in a recent decision the Supreme Court clarified that matters properly meriting the exercise of federal question jurisdiction under *Grable* are rare.  *See Empire Healthchoice Assurance, Inc. v. McVeigh*, 126 S. Ct. 2121, 2137 (2006) (quoting *Grable*, 545 U.S. at 313) (noting that "*Grable* emphasized that it takes more than a federal element 'to open the . . . arising under . . . door," and holding that an action by a health insurance carrier for federal employees against an enrollee's estate seeking reimbursement of benefits on the ground that the enrollee had recovered damages for his injuries in a state-court tort action "cannot be squeezed into the slim category *Grable* exemplifies.").  The Court sees no reason to enlarge federal question jurisdiction to embrace any state-law tort action that, as in this case, potentially implicates issues of federal preemption.  This case will be remanded to state court.

## CONCLUSION

Senior District Judge Foreman's order denying remand of this case to state court (Doc. 22) is **VACATED**.  Pursuant to 28 U.S.C. § 1447(c), this case is **REMANDED** to the Circuit Court of the Twentieth Judicial Circuit, Perry County, Illinois, for lack of federal subject matter jurisdiction. ICR's motion to publish Judge Foreman's order (Doc. 23) is **DENIED**.

**IT IS SO ORDERED.**

DATED:  January 5, 2007

 S/G. Patrick Murphy_____
G. PATRICK MURPHY
Chief United States District Judge